(No. 35302.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE FUNCHES, Plaintiff in Error.

*Opinion filed November 18, 1959.*

WILLIAM K. BACHELDER, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

George Funches, hereinafter called defendant, was indicted in Cook County for the crime against nature upon another male person, which crime occurred June 24, 1958. On July 9, 1958, he was arraigned and advised of his rights, and asked that counsel be appointed, which was done, and he then pleaded not guilty. Defendant waived trial by jury and was, on October 17, 1958, tried before the court, found guilty and sentenced to the penitentiary for not less than one nor more than ten years.

Defendant brings this writ of error to this court asserting that (1) the People tried to prove two different versions of the case and to convict defendant on both, without electing between them, (2) that he was deprived of legal representation by the obvious lack of preparation of trial counsel and the hasty and superficial conduct of the trial, and (3) that he was denied due process by the failure to take him before the nearest magistrate without unnecessary delay, and the failure to accord him a speedy trial.

It appears from the testimony of the complaining witness that while he was standing near 49th and Prairie streets in Chicago, at about 1:35 A.M. on June 24, 1958, talking to a woman, two men walked up and told the woman to leave. One of them, identified as this defendant, put a knife to his neck and forced the complaining witness to walk around to an alley between 48th and 49th streets, where the defendant took two pair of shoes, a pack of cigarettes and 28 cents from the witness. The one man

walked away, after which defendant forced the witness to lie down and committed an act of sodomy while holding the knife in the witness's back. When defendant left, the witness found a police squad car and told them what had happened. They put him in the car and drove around until they saw the defendant on a corner trying to sell the shoes, whereupon the police picked him up. The police took a knife from defendant which the witness identified as the one used to threaten him. The witness denied ever having seen defendant previously, and claimed the streets were dry on the evening of this attack.

Police officer Robert John testified the complainant approached his squad car and related the assault and robbery. He and officer Kelly took the complainant into their car and cruised around until they saw defendant on the street. They arrested defendant, took a knife from him, and took him to the station. Officer John said it had not been raining on that evening.

Police officer Robert Jones was on duty at the station when defendant was brought in. He questioned the defendant in the presence of officers John and Seaberry. He said that defendant admitted the crime, and that he took the shoes in payment. He related that defendant admitted being homosexual, but admitted an act of perversion upon the complainant other than that complained of. Jones was also present at the sex bureau in the State's Attorney's office when a written statement was taken from defendant, which was admitted in evidence. This statement by defendant admitted his being in the alley with the complainant at the time alleged, the taking of the shoes and the 28 cents and that he committed an unnatural act other than the one claimed by the complainant, but denied any force or threats to the complainant.

The defendant, in testifying on his own behalf, claimed he had known the complainant for two months and that

complainant had taken a watch and other things from his home. He saw the complainant with a woman, and told her he would like to talk to complainant, that they went around the corner and argued over the things he said were taken, whereupon he hit the complainant and took what he had as security. He claimed he had done nothing, and that if complainant's story was true his clothes would have been soiled as it had been raining. He asserted he was turned over to two narcotics officers—one of whom was Jones, who wanted to use him as an informer. Defendant did not want his family to know about his activities, so he gave the police the statement to help them get him assigned as an informer. He claimed he had had sexual relations with the complainant several times.

The court inquired whether the defendant, in making the confession, understood that Jones wanted him to inform on other addicts, and defendant answered that he so understood. The court called Jones back to the stand, whereupon Jones denied either threatening defendant or making any promises to him. The court also called officer Seaberry who investigated the case with Jones. Seaberry also denied that any threats or promises were made to the defendant.

The court recalled the complainant; who denied knowing the defendant, denied visiting him, and denied taking any of his property.

Upon the finding of guilt by the court, defendant moved for new trial and for arrest of judgment, which motions were overruled, and probation was denied. He was then sentenced.

Defendant first urges that the prosecution succeeded in convicting him by trying to prove two different versions of the case, without electing between them. The evidence of the complainant shows one criminal act, and the oral and written statements of the defendant, produced by the prose-

cution, show a different crime against nature. This is not a situation such as is reported in *Baker* v. *People,* 105 Ill. 452, wherein two different, but similar crimes, involving different defendants on each occasion were permitted to be proved in one cause; nor one such as *Hubby* v. *United States,* (5th cir.) 105 F.2d 168, wherein the crime alleged was shown to have occurred at differing times, without election as to which crime was proved to support the conviction. Here the crime against nature is shown to have been committed at one time, in one place, by the defendant, and only upon and against the complaining witness. Only the means or method of accomplishing the unnatural act differs in complainant's testimony and in the oral and written statements of the defendant. Either means is criminal, and each constitutes the crime against nature. Only one criminal act is shown by the prosecution, or claimed by either the defendant's statement or complainant's story. Merely the revolting method of accomplishment is in dispute, and the court was free to accept that which it found to be proved. The testimony of the complainant—or the statements attributed to the defendant—together with the corroborating testimony, are sufficient to sustain the conviction. Only one crime is shown. The court heard and observed the witnesses as they testified and could best determine where the truth lay. The facts are not so conflicting, or so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt of a crime against nature. He would be guilty whether he employed one of either means, or both.

Defendant asserts that he was represented at the arraignment by one attorney from the public defender's office, and by another at the trial, that no one made any preparation for his defense until the morning of the trial, nor investigated for witnesses until that day, and that the defense was poorly and improperly conducted, hence depriving him of

legal representation. The People produced all of the persons who had any knowledge of this occurrence at all, who were known or could be found. Defendant's counsel was careful to protect defendant from incompetent witnesses, and to point out such matters of defense as were shown by the evidence. The statement given by defendant left little room for defense other than that employed by counsel. We fail to find, from the record of this cause and in consideration of the nature of the case, the previous record, and the admissions of the defendant, that the representation of the defendant in this situation was of such a low caliber as to amount to no representation or to reduce the trial to a farce. (*People* v. *De Simone,* 9 Ill.2d 522.) It appears to us that the representation of defendant was adequate.

Finally defendant contends he was denied due process in that he was not taken before the nearest magistrate without unnecessary delay after his arrest, and was denied a speedy trial. Nothing in the record indicates that defendant was not brought before a magistrate on June 25, 26, or any other day. To be entitled to review upon the point alleged defendant must show to the court that he was not taken before a magistrate without unnecessary delay. We are restricted in our review to the record certified to this court, (*People* v. *Shoffner,* 400 Ill. 174,) and we cannot speculate or surmise as to matters not shown of record.

Section 18 of division XIII of the Criminal Code (Ill. Rev. Stat. 1957, chap. 38, par. 748,) provides, that a person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried by a court of competent jurisdiction within four months of the date of commitment shall be set at liberty, unless the delay shall happen on the application of the prisoner. It further provides that if the prisoner is admitted to bail, he shall be entitled, on demand, to be tried within four months. By defendant's

own admission he was tried within 116 days of his original commitment. Obviously there is no merit to his claim that he failed to have a speedy public trial.

Failing to find error in this cause as alleged by defendant, we must and do hereby affirm the judgment of the criminal court of Cook County.

*Judgment affirmed.*