THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AUSTRALIA GREER, Defendant-Appellant.

(No. 54197;

First District—March 2, 1971.

*Rehearing denied March 19, 1971.*

Gerald Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, and Gary Steinberg, Senior Law Student, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Themis N. Karenezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

After a bench trial, defendant was found guilty of robbery and sentenced to the penitentiary for a period of three to five years. He appeals and contends that he was not proved guilty beyond a reasonable doubt.

*RUSSELL FLOWERS,* complainant, testified for the State:

He occupied a small kitchenette on the first floor of an apartment building. He was living there on January 15, 1969. At the time he was unemployed. At approximately 6:00 P.M. he left his quarters to use the washroom located adjacent to the common hallway. Defendant was known to him. Defendant was called "Al" and had been seen in the building on previous occasions. Defendant came up behind him and "ran his (defendant's) hand in his pocket." He grabbed defendant's hand, but defendant stuck something against his side and told him to relax and he would not get hurt. Defendant removed his $15.00.

He went to the adjoining apartment which is occupied by Gene Williams and summoned the police who arrived within five minutes. At his direction the police officers went upstairs to the third floor endeavoring to apprehend the defendant. The officers were unable to locate defendant and they returned to his apartment. Within 5 or 6 minutes, defendant came downstairs to his apartment.

On cross-examination he testified that he was unemployed and was receiving the sum of $174.00 in State aid because of disability. As he started to lock his door to visit the washroom, he observed defendant and three or four other men in the hallway. He had seen all of them on previous occasions but did not know them by name. One of these men in the hallway was defendant's brother, William Greer, but he did not know whether any of these men in the hallway were looking in his direction at the time. He did not cry out for help or say anything to them.

He had seen defendant on previous occasions but they had never spoken nor had they any difficulty between them. He directed the police to go up to the third floor apartment, because he heard defendant run upstairs and he knew where defendant lived. He thinks he told police that there were people in the hall and he saw the police talking to them.

On redirect, he testified that the people in the hall were witnesses. They were looking at him and had to see it.

*GEORGE HALKO,* a police officer testified for the State:

He and his partner responded to Flowers' call. After interviewing Flowers they went to the third floor, but just prior to this they also interviewed Gene Williams whose apartment is adjacent to Flowers'. He, his partner and Flowers went upstairs to the third floor. There were several people standing in the hallway and he saw his partner at the open door of an apartment, but could not recall if he saw anyone in the apartment. He, his partner and Flowers went back downstairs to Flowers' apartment. As the police report was being completed, defendant appeared and stated that he, the defendant, had been advised that he was being sought.

On cross-examination he testified that Flowers described the person who committed the robbery as wearing a brown fur cap, green coat and brown shoes and also informed the police that the offender's nickname was Al. Flowers did not know the full name. Flowers appeared sober. There was no odor about Flowers. The case report was typed up by Officer Sabbia on information furnished by him. He never told Sabbia that Flowers was inebriated. The report does reflect, however, that Flowers had been drinking.

At the time of this arrest he had been a Chicago policeman for approximately five months. In his opinion Flowers was sober. He did not recall Flowers falling asleep at the police station. A search of the defendant did not reveal any money. The name of only one witness was obtained, that of Gene Williams, who Flowers said was in the doorway to the adjacent apartment when the robbery occurred and could have seen it.

He had a conversation with Williams who was not in court. Williams resides at the same place as Flowers.

A few people on the third floor were interviewed, but Flowers never told the officers that any of the people on the third floor witnessed the robbery. Flowers told the police that as far as Flowers was aware only Williams may have witnessed the event.

On redirect he testified that at the interview conducted at the scene nothing was written down. The name "Al" was not typed on the report, because by that time defendant was in custody and had furnished his name.

On recross he testified that when he responded, there was a reference by Flowers to a weapon. No weapon was named except a hard object. In a conversation at the scene with Williams, he ascertained that Williams knew or had a better knowledge of the name of the offender. He could not say that Williams was not a witness to the event. He asked Williams if he had seen what had transpired in front of Flowers' apartment.

*PAUL NEWELL,* a police officer, testified for the State:

He responded with Officer Halko. While Halko interviewed Flowers in Flowers' apartment, he went up to the third floor where he saw an open door leading to an apartment. Some people were standing in the doorway. A short time thereafter, Flowers and Halko came up to the third floor. They never gained entry to this apartment, but went and knocked on the door of another apartment. He, Halko and Flowers returned downstairs to Flowers' apartment and while there, defendant appeared and told them he, the defendant, had been advised he was being sought by the police. Defendant was placed under arrest.

On cross-examination he testified that Flowers was coherent and could be understood. Flowers was not under the influence of intoxicating liquor. He did not dictate to Officer Sabbia information which was typed on the robbery case report. He saw that the report indicates that Flowers had been drinking, but no one told Sabbia to insert that notation.

He never asked Flowers the denomination of the currency that was taken. No money or weapon was found on defendant's person. Flowers said that there was one person who might have witnessed the incident and that was Williams. He did not talk to Williams. He has no recollection of Flowers telling him that at the time of the robbery there were people in the hallway.

*HAROLD COBB,* testified for the defense:

On January 15, 1969, he lived in the same building as Flowers. On that date he had been drinking with Flowers along with defendant. He has known Flowers for several years. On this day they were drinking wine in the hallway of this building. They all drank wine. This went on all day during which time they drank two or three fifths of white port. They all chipped in to buy the wine. After drinking, everyone left. He did not see defendant take any money from Flowers. In his opinion Flowers was intoxicated. Flowers' reputation for telling the truth is no good. Flowers has accused other people of taking money. He did not see the police in the building.

On cross-examination he testified that on January 15, 1969, he was living at 4900 Forestville. He was visiting 4332 Drexel where he previously lived and had friends. He had other occasions to drink with Flowers. He could not recall what happened on January 15, 1969, but he could have visited 4332 Drexel that day and been out front or in the hallway. He was not there on January 15 in the afternoon nor in the evening.

On redirect he testified that he did not remember when defendant was arrested, but heard about it sometime after. He could not recall how

long after, but it was the same day defendant was arrested. He had not been drinking that day with the defendant or Flowers.

AUSTRALIA GREER, testified on his own behalf as follows:

He recalls the day he was arrested. He did not live in the building, but came there to visit friends. He arrived at 2:00 P.M. in the afternoon and had occasion to see Flowers there at about 6:00 P.M. standing in the vestibule with some other people. Cobb was one of these people. There was a person there he only knows by the name of Dennis. When he initially saw Flowers and Cobb, he observed that his brother William Greer was with them. They were just standing around talking. He suggested that they get together and get a drink. They pooled their money and he accompanied Dennis to the liquor store. They purchased some wine. Flowers did not have any money to contribute. Dennis and the witness went upstairs to the third floor. They saw Cobb and Flowers who both asked for a drink. He let all have a drink from the bottle except Flowers who he insisted must have a glass in order to drink. He observed that Flowers seemed drunk. He did not have an argument with Flowers or Cobb. After he had been in Dennis' apartment on the third floor, he was told that the police were seeking him. He came downstairs to Flowers' apartment and when he was told that Flowers accused him of robbery, he tried to argue with the officer, but the police told him that he would have to come to the police station and let the sergeant settle it. Earlier in the day Flowers had given him 45 cents to chip in for some liquor. Some wine was poured into a glass for Flowers. He saw Flowers between 3:00 P.M. and 6:00 P.M. that afternoon standing in the hallway. When he refused to give Flowers a drink out of the wine bottle, Flowers became very angry. He has been convicted of felonies on two previous occasions. He did not rob Flowers nor does he have any knowledge that Flowers was robbed.

On cross-examination he testified that his friend Dennis lives in the building on the third floor and that is where he went when he arrived. He remained there for about fifteen minutes before they decided to get a drink. He bought a pint of wine with his money and returned to Dennis' apartment. He was gone about five minutes. It was about 3:00 P.M. Approximately 3:10 P.M. they finished the wine and for about a half hour they just sat and talked. They then went downstairs and saw Flowers, Dennis and his brother William Greer standing in the vestibule. He went out alone at about 6:00 P.M. and bought another bottle of wine. He returned in 5 minutes. He shared it with his brother and Cobb, but refused to give any to Flowers unless Flowers got a glass. He had seen his brother at 2:00 P.M. at their sister's home and earlier in the hallway. When he returned with the bottle, he saw Dennis standing

on the steps with Cobb, Flowers and his brother William Greer who asked what he was carrying in the bag. He told him it was wine and gave him some. All shared in drinking some wine, but Flowers did not have a glass so he did not get any. He was unemployed at the time of the robbery. He has not seen Dennis since the day he was arrested.

On redirect he testified that he did not allow Flowers to have a drink of wine because Flowers did not have a glass. When he told Flowers this Flowers told him he had no business in the building and sounded angry.

*OPINION*

Defendant contends that he was not proved guilty beyond a reasonable doubt and cites the following facts to illustrate the alleged insufficiency of the State's case:

1. Defense witness Harold Cobb testified he was in the hallway but saw no robbery taking place.
2. Cobb further testified that Flowers' reputation for truth was bad and that Flowers has accused other people of taking money.
3. Flowers' testimony was replete with irreconcilable contradictions, inconsistencies and improbabilities.
4. The State presented neither Williams nor any of the men in the hallway to corroborate Flowers' testimony.
5. Defendant conducted himself in a manner consistent with his version of the facts by voluntarily surrendering to the police.

Defendant further cites *People v. Coulson* (1958), 13 Ill.2d 290 wherein the court stated at page 295-296:

" * * * [I]t is the duty of a jury, or of a court sitting without jury, to determine the credibility of the witnesses and the weight to be given their testimony, and on review, this court will not substitute is judgment for that of the jury or trial court. [Cases cited.] But it is the duty of this court to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed. [Cases cited.]"

While defendant urges the value of Cobb's testimony as both corroborative of his testimony and impeachment of Flowers', we find it of little weight. Originally, Cobb testified that he lived in the same building as Flowers and drank with him on the day of the occurrence. However, he subsequently contradicted both statements. His testimony was confused and obviously unreliable.

■■ Defendant cites two examples to show that Flowers' testimony was "contradictory, inconsistent, and improbable." Flowers testified that two or three men were standing in the hallway at the time of the oc-

currence, but later testified that there were four or five men. Flowers also testified that he didn't know whether these men saw the robbery, but later testified that they must have seen it. Since Flowers would have no way of knowing with certainty what in fact the men did see, we fail to see how he could be impeached on this point. Moreover, none of these facts bear any relationship to the probability of defendant's acts as outlined by Flowers.

■■ Defendant next maintains that the State's failure to present either Williams or the men in the hallway as witnesses gives rise to a strong inference that their testimony, had it been presented would have been damaging to the State's case. Defendant cites *People v. DiVito* (1966), 66 Ill.App.2d 282 and *People v. Eyre* (1967), 83 Ill.App.2d 123. The absent witness in *DiVito* was present in the complainant's apartment when it was allegedly ransacked by defendant and obviously witnessed defendant's acts if they transpired as contended by the State. The absent witness in Eyre was accompanying complainant down the street when defendant allegedly attacked complainant and if called, would have necessarily either corroborated or contradicted the complainant's version of the occurrence. Therefore, without sufficient facts tending to show that the parties in the present case would have either corroborative or contradictory testimony, we can assign no significance to the State's failure to present them as witnesses.

■■ Defendant next maintains that since flight tends to prove guilt (*People v. Schaffner* (1943), 382 Ill. 266), the voluntary act of surrender tends to establish innocence. While we recognize the proposition stated in *Schaffner*, we find that the converse is not necessarily true in all circumstances, but must be weighed with all other evidence presented. When the testimony is in dispute, it is up to the trier of fact to determine the credibility of the witnesses (*People v. Tensley* (1954), 3 Ill.2d 615), the court will not reverse unless the evidence is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt.

■■ The evidence in the present case is unlike that in *Coulson, supra,* where the State's evidence presented an array of improbabilities. Nor do we deem the facts in *People v. Bucholz* (1936), 363 Ill. 270 analagous to the present case. We find that the evidence is not so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt as required for reversal in *Coulson, supra,* but rather find the evidence adequate to establish defendant's guilt beyond a reasonable doubt. *People v. Davis* (1970), 126 Ill.App.2d 255.

■■ Defendant next contends that the sentence of three to five years

was imposed because he refused to plead guilty to a misdemeanor. However, the record is devoid of any evidence to support this contention and we cannot speculate and surmise as to matters not shown of record. *People v. Funches* (1959), 17 Ill.2d 529.

Therefore, the judgment is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and McCORMICK, J., concur.