THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME NEAL (Impleaded), Defendant-Appellant.

(Nos. 55895, 56214, 56833-9 cons.;

First District (5th Division)—November 21, 1973.

*Rehearing denied January 4, 1974.*

James D. Montgomery, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, William K. Hedrick, and Sharon H. Grossman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendant was found guilty of the armed robbery of a Chicago pharmacy. Tried by the court without a jury, he was held accountable for the conduct of the actual perpetrators of the crime. Judgment was

entered and defendant was sentenced to a term of two years to two years and a day. At the time of trial defendant was on probation on seven charges of burglary and attempt burglary. Following his armed robbery conviction a revocation hearing was held and his probation was terminated. He received concurrent sentences of two to four years on these charges. Defendant's appeals from his armed robbery conviction and the termination of his probations have been consolidated.

## I.

Defendant raises six contentions in his appeal from his armed robbery conviction: (1) The State failed to introduce any evidence that a dangerous weapon was employed in the commission of the alleged offense; (2) the identification of him was based on inadequate observation and fails to connect him, beyond a reasonable doubt, with the commission of the offense; (3) his conduct was inconsistent with the behavior of a man involved in an armed robbery; (4) the State failed to show that despite his drugged condition he nevertheless possessed the intent to promote or facilitate the commission of an armed robbery; (5) the only evidence linking him to the offense was obtained by means of his unlawful arrest and detention; and (6) the incompetence of his trial counsel deprived him of a fair trial.

Defendant was charged with the accountability for the armed robbery of a drug store located at the intersection of Grand and Mobile in Chicago by codefendants Raymond Burke and Burt Scribner. Both codefendants pleaded guilty to the offense after an unrecorded conference in chambers.

At trial Joseph Fedor, owner of the pharmacy and the victim of the crime, did not testify. It was stipulated, however, that Fedor would have testified that on November 24, 1969, at approximately 2:00 P.M., his store was robbed of a quantity of narcotics and currency by two men, one of whom was armed with a gun. Neither of these men was defendant.

Patricia Wood testified for the State that at approximately 2:00 P.M. on November 24 she was in the kitchen of her first floor apartment at 2228 North Mobile. Through the kitchen windows she noticed a car, which she described as a white Oldsmobile, back down the alley and come to rest beneath her kitchen window. The car then backed up again, and from her bedroom she saw that the Oldsmobile was directly beneath the windows of this room. She estimated the distance from her window to the car to be less than 20 feet. One man got out of the car and walked toward Grand Avenue. The man behind the wheel moved the car back and forth about five or ten feet. As Mrs. Wood watched this scene the driver looked up at her. She estimated that she was able to observe him in this pose for a period of from between 15 and 30

seconds. She was able to see that the rear license plate of the car was missing. After a few minutes the man who had left the car returned carrying a brown bag. Mrs. Wood could describe him only as being dark and wearing dark, perhaps black, clothing. The man got into the rear of the Oldsmobile, looked out the back window and then lay down on the floor as the car drove away. Assuming something was amiss, Mrs. Wood walked to the drug store where she learned of the robbery. She described to a police officer investigating the crime what she had seen in the alley. At a police lineup she pointed out defendant as the driver of the Oldsmobile.

Officer Pardell of the Chicago Police Department testified that on the day in question at about 2:00 P.M. he was on patrol in his squad car. He received a radio message that the pharmacy at Grand and Mobile had been robbed and a "look-out" message describing "the offenders and their vehicle." He thereupon proceeded to the area of the robbery. As he turned down the 2100 block of McVickers he observed defendant and Scribner. Noticing that Scribner was carrying a bag, he approached the two men observing that "the description became closer to that one of the wanted persons as described in the look-out message." He got out of his squad car and saw that the bag bore the advertising legend of the Grand-Mobile Pharmacy. He placed both men under arrest. He found no proceeds of the robbery in the possession of defendant. Scribner told the officer where in the get-away car the gun used in the robbery could be found.

Detective James Phalen of the Chicago Police Department testified that while investigating the drug store robbery he proceeded from the scene of the crime to a location about two blocks away where a light colored Oldsmobile bearing no license plates had been found. A search of the car revealed a revolver, a quantity of narcotics, commercial narcotics and a quantity of coins. Detective Phalen then drove to the Fifteenth District Police Station. There he conducted the lineup in which defendant participated. After the lineup, defendant made an oral statement to Phalen. Defendant told him that he had been driving with Burke and Scribner when they passed the Grand-Mobile Pharmacy. Burke stated that it looked like a good place to "stick-up" and directed defendant to drive into an alley just south of the drug store. He proceeded into the alley and stopped. Defendant there told Burke and Scribner that he did not want to participate in the robbery. During the time they were in the alley no one got out of the car. Defendant drove to another location where he got out of the car. His codefendants drove away. Defendant then bought some groceries. Shortly thereafter, while walking toward his girl friend's house, defendant happened upon

Scribner. They were arrested together. Phalen could recall nothing in defendant's statement to the effect that Burke and Scribner had given him any pills.

Linda Neal, defendant's wife, testified on his behalf. On the date of the crime they were not yet married. She received a phone call from defendant on the afternoon of November 24, at which time she requested that he purchase a loaf of bread. After she learned of defendant's arrest, she went to the police station and was present when defendant made a statement to Detective Phalen that Burke and Scribner had given him "pills" that afternoon. When Mrs. Neal saw him at the police station, defendant was still "high."

Defendant testified on his own behalf that he had been driving with Burke and Scribner on the afternoon of the robbery. Earlier that day, after he complained of a headache, he was given a multicolored pill by Burke. Burke and Scribner, who had been drinking, began talking of committing a robbery. Burke reached under the front seat of the car, pulled out a gun and told defendant to turn down a street. Burke then got out of the car. As he left, defendant told him, "I don't want nothing to do with this. I'm leaving." Defendant, with Scribner still in the car, pulled out into the street and drove about four blocks. He then got out of the car and Scribner drove off. Defendant, after making a phone call, bought a loaf of bread. He called a cab and was waiting for it near a bus stop when he again saw Scribner. Defendant asked him what had happened. Scribner replied, "We did it," whereupon he pulled a Grand-Mobile Pharmacy bag from beneath his coat. It was at this time that they were arrested.

The court on this evidence found the defendant guilty, stating, "We are dealing with the driver of a car in a robbery."

■■ It is defendant's first contention that the State failed to introduce any evidence that a dangerous weapon was employed in the commission of the offense. There is no merit to this claim. The stipulated testimony of Joseph Fedor, the victim of the crime, states in pertinent part:

"* * * [T]wo men entered the store and when I turned around defendant Burke was standing there holding a gun and told me that this was a stickup. He then wanted my narcotics and all my money. I gave him approximately $11,083 in currency and coins and various amounts of drugs such as morphine and codeine."

Clearly, this record establishes the use of a weapon in the commission of the offense. Although defendant here claims that the State's Attorney did not mention the use of a weapon in his oral representation of the

contents of the stipulation, no objection was lodged by defense counsel when Fedor's full statement was read into the record. This point was therefore waived for review. See *People v. French*, 33 Ill.2d 146, 210 N.E.2d 540.

■■ Defendant's next contention is that Mrs. Wood's eyewitness identification of him was inconclusive and, moreover, failed to link him to the commission of the offense. Mrs. Wood testified that the defendant sat in a parked car located less than 20 feet below the windows of her home for a period of five minutes. She noted the departure of a passenger from the car. Her curiosity was further aroused by her discovery that the car's rear license plate was missing. Most important, there was an interval of up to 30 seconds when defendant stared up at her, giving her a "full-face" view of him. That defendant's face was engrained in her memory may be inferred from the fact that her apprehension of wrongdoing was sufficiently stirred to lead her to leave her apartment and walk to the drug store to learn "if anything had happened." On the basis of this testimony, we believe that Mrs. Wood's subsequent identification of defendant at the lineup was positive and conclusive. The fact that defendant's testimony in some ways controverted that given by Mrs. Wood only gives rise to a question of credibility. Given the superior position of the trial court to resolve these inconsistencies, we will not reverse its finding. See *People v. Woods*, 26 Ill.2d 582, 187 N.E.2d 692.

■■ Defendant argues, however, that even if we accept Mrs. Wood's identification of him as being positive, it did not link him to the commission of the robbery. This assertion too must be rejected. The totality of the circumstances surrounding defendant's identification and arrest support a finding that he was accountable for the crime. Defendant testified that he spent the entire morning and early afternoon of November 24 in the company of his codefendants, Scribner and Burke, both of whom admitted the actual commission of the robbery. He was present when plans for the robbery were discussed. Defendant was seen in the driver's seat of the "get-away car" as it was parked near the drug store at the time of the hold-up. This car, identifiable by make, color and the fact that it bore no rear license plate, was found to contain what were apparently the gun used in the robbery and some of the proceeds of the crime. Defendant's arrest with Scribner within 20 minutes of the robbery was based upon the description of the suspects given to the police by Mrs. Wood. It is not necessary that the trier of fact be convinced beyond a reasonable doubt of each link in the chain of proof if the whole is convincing of guilt beyond a reasonable doubt. (*People v. Franklin*, 341 Ill. 499, 173 N.E. 607; *People v. Holt*, 7 Ill.App.3d 646, 288 N.E.2d 245;

*People v. Lofton,* 64 Ill.App.2d 238, 212 N.E.2d 705.) We feel that here the inferences flowing from each piece of evidence, taken as a whole, conclusively link defendant to the armed robbery of the Grand-Mobile Pharmacy.

Defendant argues that his conduct immediately prior to his arrest was inconsistent with that of the perpetrator of an armed robbery fleeing the scene of the crime. Specifically, it is defendant's view that he is exculpated by the fact that shortly after 2:00 P.M. he telephoned his girl friend and then bought her some groceries. Even if we accept this testimony as fact, it would go only to the weight of the evidence establishing his guilt. Since the evidence before us is not so improbable or unsatisfactory as to raise a serious doubt as to defendant's guilt, we do not feel it necessary to overturn the judgment of the court below. *People v. Greer,* 132 Ill.App.2d 590, 270 N.E.2d 849.

■■ It is defendant's next contention that due to his drugged condition he could not be held legally accountable for the acts of his codefendants. He claims that the pill given to him on the morning of the crime by Burke and Scribner made him "high" and thus he became their passive pawn. Detective Phalen, however, testified that defendant failed to mention his ingestion of drugs when he made his oral statement following the lineup. The evidence being in conflict, it is apparent that the trial court did not find defendant's self-serving testimony to be credible on the issue of his condition. Moreover, the evidence demonstrates that knowing of the robbery plan, defendant acted as driver of the "getaway" car, patiently waiting in the alley until his accomplice returned with what were apparently the proceeds of the crime. Defendant's argument with Burke and Scribner about his participation in the robbery further demonstrates that he could appreciate the criminality of his acts.

Relying on the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407, defendant argues that eyewitness identification evidence which resulted from what he contends was his illegal arrest should have been suppressed. It being clear that defendant did not move for suppression below, he is now foreclosed from raising the issue on appeal. "A constitutional right, like any other right, may be waived." *People v. Busch,* 131 Ill.App.2d 430, 268 N.E.2d 209; *People v. Carter,* 132 Ill.App.2d 572, 270 N.E.2d 603, *cert. denied,* 406 U.S. 962.

■■ Defendant argues, however, that this failure to move for suppression below was due solely to his retained counsel's incompetence and on this basis his conviction should be overturned. Upon reviewing the record we must conclude that trial counsel's decision not to attempt to suppress identification evidence relates more to trial tactics rather than to ignorance of fundamental constitutional principle.

■■ Defendant has attempted to bolster his assertion that his retained trial counsel was incompetent by pointing to other instances of allegedly ineffective representation. In dismissing this contention we need merely note our Supreme Court's recent holding in *People v. Fleming*, 50 Ill.2d 141, 145, 277 N.E.2d 872, wherein it was stated:

> "We consider there is no basis to the defendant's claim that he did not at trial have the effective assistance of counsel. Where, as here, an accused has retained counsel of his own choice this court has observed: '[H]is judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. [Citations.] This court has said that ordinarily a defendant who retains counsel of his own selection is responsible if that counsel does not faithfully serve his interests; that any other rule would put a premium upon pretended incompetence of counsel, for if the rule were otherwise, a lawyer with a desperate case would have only to neglect it in order to insure reversal or vacation of the conviction.' (*People v. Stephens*, 6 Ill.2d 257, 259.) Thus, a defendant will not, unless the representation was so inadequate as to reduce a proceeding to a farce (*People v. Nelson*, 42 Ill.2d 172), be heard to complain of his retained counsel."

For the foregoing reasons the judgment in appeal number 55895 is affirmed.

## II.

Defendant next contends that his probation was improperly revoked. ■■ On September 2, 1969, two months before the robbery of the Grand-Mobile Pharmacy, defendant pleaded guilty to seven separate charges of burglary and attempt burglary and was placed on probation for a period of five years. Upon his conviction for armed robbery a rule to show cause why probation should not be terminated was filed. A hearing was held on the matter, at which time counsel for defendant* with the consent of the State stipulated to this conviction. Defendant was held to have violated the conditions of his probation and was sentenced to concurrent terms of from two to four years on those charges. He now claims that revocation of his probation was improper. A violation of a criminal statute constitutes a breach of one of the conditions of probation. (Ill. Rev. Stat. 1971, ch. 38, par. 117—3.) Defendant having been

---

* Defendant was represented at his probation revocation hearing by his counsel on appeal.

afforded a hearing in open court, at which time he was represented by counsel,* we see no impropriety in the revocation of his probation because of his conviction for armed robbery.

The judgments in appeals numbers 55895, 56214 and 56833-4-5-6-7-8-9 are affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.