People of the State of Illinois, Plaintiff-Appellee, v. Eugene McIntosh, Defendant-Appellant.

Gen. No. 50,594.

First District, Third Division.

April 6, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James N. Gramenos and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert J. Beranek, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Eugene McIntosh was found guilty in a nonjury trial of the offense of armed robbery. He was sentenced to the penitentiary for a term of four to ten years. He contends that the State failed to prove him guilty beyond a reasonable doubt.

Max Mason, a cabdriver, picked up a male passenger at California Avenue and Madison Street, Chicago, about 2:40 a. m. on January 12, 1965. As he neared the address given him the passenger told him to stop. He stopped his cab and opened the left-hand door. As the door opened the

interior lights of the cab came on. The passenger told him to shut off the lights and, when the door was closed, said "now give me your money." Mason turned and saw the man take a gun from his pocket. He pointed it in Mason's face and repeated his demand. Mason said "I need this money . . . that is all I have." The man did not answer so Mason reached into his pockets with both hands and gave the robber his paper money with one hand and his change with the other. Part of the money dropped and, as the robber reached for it, Mason leaped from the cab and ran. The robber climbed over the front seat and drove the cab away. Mason hailed a police car and together they searched for the robber. The cab was located a few blocks from the scene of the robbery but the robber could not be found.

On February 17, 1965, Mason was summoned to a police station. The police told him they had a suspect in another room. He testified that the minute he walked into the room he recognized the robber, the defendant McIntosh, and he asked him "What did you do with my hat?" He was referring to a hat that was in his cab at the time of the robbery. He said the defendant covered the lower part of his face with his hand and mumbled something about not knowing anything about a hat.

The defendant, who admitted his previous conviction for armed robbery, testified that at the time of the robbery he was at his sister's home. He said he and his married girl friend and her children moved in with his sister on the night of January 11, 1965, the evening before the robbery. His alibi was supported by his girl friend, his sister and his sister's husband.

The defendant defines the issue as being "whether the complainant, Max Mason, was a credible witness and whether his identification of the defendant was positive." The defendant recognizes that the law is that the testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict even though

the testimony is contradicted by the accused. People v. Solomon, 24 Ill2d 586, 182 NE2d 736 (1962); People v. Hayes, 20 Ill2d 319, 169 NE2d 760 (1960). The attack on the identification of the defendant does not question Mason's integrity or veracity but does question his powers of observation and the influence brought to bear upon him preceding his identification of the defendant.

Mason testified that the robber was wearing a light colored, bluish grey, three-quarter length outer coat with trim around the collar which was darker than the coat. He said that the defendant wore the same coat in court the day after he saw him at the police station but that at the station he was wearing a short jacket. The police officer who testified in the case, and who was one of those in the room at the station with the defendant when Mason walked in, said that the garment worn by the defendant in the station and in court the following day was the same. He described it as a black, three-quarter jacket with a black fur collar. The defendant also testified that he had on the same clothing in the station and in court; he called his coat "a black shorty with a fur collar." The discrepancies between the clothing descriptions given by Mason and the officer are the basis for questioning the former's powers of observation. These discrepancies are two: the color of the coat and whether the defendant was wearing a coat or a jacket in the police station. Neither of these discrepancies is too important. The defendant was sitting down when Mason saw him at the station and the length of his coat or jacket would not be as apparent as if he had been standing. The defendant's argument assumes that Mason's version of the coat's color was inaccurate and the police officer's and the defendant's correct. This may be so, but the coat was not introduced into evidence and the color of the coat did not enter into Mason's identification of the defendant. He identified the defendant by his face and not by his clothing. Although he had described these as well as the robber's height,

weight and age after the robbery, he recognized the robber immediately upon seeing him at the police station despite the fact that he was seated and had on what Mason thought was a different coat.

██ The factors influencing Mason's identification are said to be the telephone call he received from the police that they had a suspect in custody who fitted the description he had given and his not viewing the defendant in a lineup. Any time a victim of a crime is asked to come to a police station to look over persons arrested, there is an unavoidable intimation that the police have arrested someone who they believe might be the perpetrator of the crime. The fact that there was no lineup does not fatally weaken the evidence of identification but bears only on the weight to be accorded that evidence. People v. Washington, 26 Ill2d 207, 186 NE2d 259 (1962); People v. Lamphear, 6 Ill2d 346, 128 NE2d 892 (1955). There is nothing in the record which would suggest that Mason was influenced or was susceptible to influence. The day after the robbery he looked at films and photographs of individuals for one and one-half hours; he picked out some that resembled the robber but identified no one. No policeman talked to him from that day until he was telephoned approximately five weeks later. At the police station nothing was said to him except that they had a suspect in another room.

██ There are other factors which must be considered in appraising the identification, such as the means, circumstances and opportunity for identifying the defendant. Mason said that as a nighttime cabdriver he was wary about picking up rough looking characters. On the night of the robbery, when the man waved for him to stop, he slowed down and looked him over before accepting him; the corner was very well illuminated and he said "I got a clear look at him" and that the man appeared neat and well dressed. The four doors of the cab were locked. In admitting the passenger, Mason turned around

94

to unlock and open the right rear door and he faced the passenger as he entered. When the door opened the interior lights in the cab came on. Mason said these lights were extra bright, that he had them bright so that he could read street guides and other material. When Mason was told to stop the cab he opened the left front door; the lights came on again and he once more looked at the passenger. He had another look in the darkened cab after the door was closed and the gun was pointed in his face. Four times he scrutinized the gunman—three of them under lights. He had ample and favorable opportunities to observe and to remember him, and when he saw him again his identification was instantaneous and positive.

The trial court, as the trier of facts in this case, was justified in concluding that the defendant was guilty. The judgment will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.