People of the State of Illinois, Plaintiff-Appellee, v. Alfred Bracey, Defendant-Appellant.

Gen. No. 53,147.

First District, Third Division.
September 17, 1970.
Rehearing denied October 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, and Kenneth L. Gillis, Special Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial the defendant, Alfred Bracey, was found guilty of armed robbery. After a hearing in mitigation and aggravation which disclosed five prior convictions—one of them for robbery—he was sentenced to the penitentiary for a term of two to seven years. He contends that there is a reasonable doubt that he was the perpetrator of the offense, that the procedure leading to his identification was improperly conducted and that, due to his vague and uncertain identification, his alibi evidence should have resulted in his acquittal.

John Becola, an insurance agent, testified that on the morning of June 17, 1967, he made a collection on the 12th floor of an apartment building in Chicago. After making the collection he entered the elevator; as he turned around and faced the door, a man came in, took out a knife with a thick, long blade, and said, "This is a stickup. Play it cool." When the elevator door closed behind him, the man took $92 from Becola's pockets. The elevator descended several floors and stopped. The man pushed Becola off and continued to ride down.

Becola estimated that the encounter lasted about a minute and a half. He testified that the lighting in the elevator was good and that he saw the robber's face very clearly when he entered the elevator and during the robbery. Becola immediately reported the robbery to the police and described his assailant as about 28 years of age, between 5' 9" and 5' 10" tall, weighing about 140 pounds and light complexioned. At his trial eight months later, the defendant testified that he was 29 years of age, between 5' 9" and 5' 10" tall and weighed approximately 150 pounds. He described his complexion as dark brown.

Approximately a month after the robbery, Becola was called by the police and informed that they had arrested someone for some other incident who more or less fit the description which he had given them of his assailant. When Becola arrived at the station, he was taken to a large room in which there were civilians and policemen. Bracey and some other people were brought to the room. Becola recognized Bracey right away. Becola sat in the room several minutes and watched from a distance, while other people talked with Bracey. He saw him walk and noticed the same mannerisms he had noticed when Bracey walked into the elevator. He also noted that he was wearing the same light jacket. Later he was taken toward Bracey who was in the back of the room. He was asked if Bracey looked familiar. He replied, "Yes, sir,

that is the man that held me up." Bracey, who was standing between two policemen larger than he, denied knowing him.

Becola identified Bracey in court as his assailant and stated that a knife, which had been found in the defendant's possession, was the same or similar to the one he had seen during the robbery.

Bracey denied the robbery. He testified that he and his friend Albert Brooks spent the night of June 16, 1967, at the apartment of another friend. The apartment was located about two blocks from where the robbery took place. On the morning of June 17th, he and Brooks went to an outdoor art show at Lake Meadows Shopping Mall, on Chicago's south side. They arrived approximately at 9:00 a. m. and left at 1:30 p. m. While they were there, Brooks purchased some clothing at one of the stores in the mall. After they left the art show, they bought some liquor and returned to the apartment. Bracey's testimony as to the events and activities of June 17th was corroborated by Brooks.

Bracey testified that the knife which he had when arrested had been found by him in late June or early July on a bus. He also called attention to an "L-shaped" scar which extended from his right eye down to his lip and then back toward his ear. He said he received the scar in a 1958 automobile accident and underwent facial surgery in 1960 in an attempt to conceal it.

Becola did not mention the scar in his description of the robber and this is the chief ground for the defendant's contention that there is a reasonable doubt of his guilt. He further points out that Becola did not mention that the robber had a moustache. As to the moustache, it appears that the defendant had one at the time of his trial, but there is no testimony in the record that he had one at the time of the robbery. As to the scar, Becola's identification was not vitiated by his failure to notice it. It was not so clearly visible that it could not

have gone unnoticed. The trial court examined the scar and stated:

> "In regards to the scar, I would note that I do not believe that the scar is quite as noticeable as counsel would indicate, it certainly is discernible under inspection, but not clearly observable unless particular attention is called to it."

The defendant subsumes his alibi with his identification and claims that because of the uncertainty of the latter the former should not have been disregarded. First, Becola's identification was not uncertain. Second, the fact that the alibi testimony was not believed does not mean that it was disregarded. The trial judge considered this testimony and commented at the conclusion of the trial that he was skeptical of Brooks' corroborative testimony. There is no obligation for a trial court to believe alibi testimony over positive identification, even though such testimony may have been given by a larger number of witnesses. People v. Setzke, 22 Ill2d 582, 177 NE2d 168 (1961).

The testimony of one witness is sufficient to support a conviction if it is positive and the witness credible. People v. Uselding, 107 Ill App2d 305, 247 NE2d 35 (1969). In a nonjury trial it is the responsibility of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony, and unless the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt, the finding of the trial judge will not be disturbed. People v. Vail, 74 Ill App2d 308, 221 NE2d 165 (1966). The evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

It is argued that the defendant was denied procedural due process by the circumstances of his post-arrest identification. He claims that the procedure was so unnecessarily suggestive that it induced a mistaken identification

both at the police station and at the trial. See Stovall v. Denno, 388 US 293, 87 S Ct 1967 (1967).

■ ■ The argument starts with the telephone call that Becola received from the police saying that they had a suspect in custody who fitted the description he had given them. Whenever a victim of a crime is asked to come to a police station to look over persons arrested, there is an unavoidable intimation that the police have arrested someone who might be the perpetrator of the crime. People v. McIntosh, 82 Ill App2d 90, 227 NE2d 76 (1967). The record affords no support to the implication that Becola was influenced either by their call or by what took place at the station. At the station he watched the defendant from a distance and saw him walk and heard him speak; he especially noted the defendant's "features"; the only question posed to him by the police as they brought him close to the defendant was whether he had seen the man before. There were other civilians in the room while he was observing the defendant but it is not clear whether they were victims of crimes or additional suspects. Even so, the identification procedure fell short of a lineup. Although it was not the most desirable method of identification, it did not make Becola's in-court identification inadmissible. The law does not require that there always must be a lineup to insure correct identification of a defendant. People v. Brinkley, 33 Ill2d 403, 211 NE2d 730 (1965). The identification in the police station was preceded by the observation of the defendant at the time of the robbery. Becola saw Bracey under adequate lighting, in an enclosed elevator, for a sufficient period of time. He heard his voice, saw him walk and noted his features, physical characteristics and clothing. The detailed description he gave the police conformed almost exactly to that which Bracey furnished of himself at the trial. Further corroborative evidence was Becola's recognition of the knife found on Bracey when he was arrested. These

facts disclose an uninfluenced observation of the defendant prior to and independent of the intervening confrontation at the police station which was an adequate foundation to support the in-court identification. See People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152 (1969); People v. Nelson, 40 Ill2d 146, 238 NE2d 378 (1968); People v. Owens, 126 Ill App2d 379, 261 NE2d 785 (1970). The trial court did not err in denying the defendant's motion to suppress the in-court identification.

■ The defendant's not being represented by counsel at the police station confrontation was not a violation of due process. United States v. Wade, 388 US 218, 87 S Ct 1926 (1967) and Gilbert v. California, 388 US 263, 87 S Ct 1951 (1967) hold that a lineup is a critical stage of the prosecution and that a suspect placed in a lineup is entitled to the assistance of counsel. These cases have been construed as applying only to post-indictment confrontations. People v. Palmer, 41 Ill2d 571, 244 NE2d 173 (1969). The police station encounter between Becola and Bracey occurred, of course, prior to the latter's indictment.

The judgment is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.