The People of the State of Illinois, Plaintiff-Appellee, *v.* William B. Wyatt, Defendant-Appellant.

(No. 73-70;

Third District—November 22, 1974.

*Rehearing denied December 30, 1974.*

Bruce R. Becker, of Peoria, for appellant.

James O. Christy, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, William Wyatt, was charged with robbery and armed robbery and after a jury trial in the circuit court of Peoria County was found guilty of armed robbery. He was sentenced to a term of not less than 4 years and not more than 12 years in the penitentiary. Defendant appeals from this conviction and sentence.

On June 19, 1972, complainant Rudolph Burnett, a taxicab driver in the city of Peoria, was robbed at gunpoint at about 4 A.M. Mr. Burnett testified that on June 19, 1972, at about 4 A.M., he received a call to pick up a fare at a Peoria hotel. He stated that when he arrived he saw a man, later identified as the defendant, sitting on the curb wearing a pink muscle shirt and dark trousers. After talking with the man for 4 or 5 minutes the man went inside the hotel and then came back in about 5 minutes. The driver stated that the man picked up what he said was a pool stick wrapped in yellow paper which was leaning against a telephone pole. The driver said he noticed the man had a gold tooth and that the man was seated in the back in the opposite corner to the right. He stated that after driving to a certain destination the man announced a holdup, touched the back of the driver's seat, took the driver's changer and billfold and made him get out. The driver then started walking and heard the cab start up. He said that he walked to a certain intersection where he hailed two policemen. At the police station he was given some pictures to identify. The next morning he observed a lineup in which defendant was the fifth man. Mr. Burnett testified further that the only time he saw the gun was when he looked back and when defendant got out of the cab and that the gun was already unwrapped when defendant got out of the cab but he didn't know what happened to the paper. He went on to state that the police sergeant the next day got a lot of pictures and put them on the desk before the lineup, and that after he recognized no one in that bunch the police sent to the county jail and got a picture and sent some pictures back, and that he saw defendant Wyatt's picture in that group. Complainant identified defendant at the lineup, but since there is considerable dispute as to what transpired there, those facts will be set out in dealing with the issue concerning suppressing the in-court identification by the complainant.

■■ Defendant's first contention is that the State failed to prove every material allegation in the indictment, namely, the question whether that allegation in the indictment particularly describing the dangerous weapon as a 12-gauge shotgun was a material element to the offense. Defendant cites three cases which support the validity of the general rule but each case is distinguishable on its facts. In *People v. Coleman*, 49 Ill.2d 565,

276 N.E.2d 721, the court affirmed a murder conviction and rejected defendant's contention that the means used to kill the victim was not a formal defect in the indictment which could be changed by amendment. In *Coleman*, on motion of the state's attorney, the indictment was amended to charge murder by asphyxiation by use of hands, bedsheet or blanket after defendant had been charged with the murder of his wife by stabbing with a knife. In *People v. Ball*, 126 Ill.App.2d 9, 261 N.E.2d 417, the court on rehearing upheld reversal of a conviction on the charge of indecent liberties with a child where the indictment failed to allege act or acts by which defendant allegedly committed the offense. In *People v. Jamison*, 92 Ill.App.2d 28, 235 N.E.2d 849, the court reversed the conviction for burglary where the indictment failed to allege complete ownership of the building. The court discussed the reasons for requiring the ownership of property to be stated in an indictment for burglary. In the case at hand the type of weapon used is not a material allegation in an indictment for armed robbery. The only necessary element to convert robbery into armed robbery is that the robber be armed with a dangerous weapon. There was sufficient testimony to establish that defendant was armed with a gun, and the particular type of gun is not necessary to the case.

Defendant's next argument relates to the prosecutor's closing argument to the jury. Defendant contends that the following two statements constituted inflammatory, prejudicial remarks. The first is: "You have all been instructed as to the beyond a reasonable doubt standard required in this case and I am not going to give you any instructions on what reasonable doubt is * * * The Judge will do that, if necessary. I am not going to say anything about it but I would like to point this out, hundreds of Courts every week with jurors such as yourselves use this particular standard * * * this reasonable doubt standard and use it to the point someone is found guilty of a crime." After defendant's objection was overruled and his motion for mistrial denied the prosecutor went on to state: "As I stated before the momentary break, hundreds of Courts have used this particular standard in the United States, use it every week and as I said earlier, guilty verdicts are returned based on this standard." Defense counsel again moved for a mistrial which was denied. On rebuttal the State made the following statement: "The burden of the People in this case is to prove the guilt of the Defendant, William Wyatt, beyond a reasonable doubt. Now, it isn't to prove him guilty beyond all doubt or any doubt, our burden is to prove him guilty, beyond a reasonable doubt."

■■ Defendant cites *People v. Malone*, 126 Ill.App.2d 265, 261 N.E.2d 776, in which the court upheld the trial court's refusal to permit defense counsel during closing argument to present to the jury his interpretation

of reasonable doubt. The court discussed the Illinois Pattern Jury Instruction Committee's recommendation that no instruction be given defining reasonable doubt because it is a term needing no elaboration and any attempt to define it would be futile. The People cite the IPI—Criminal Instruction Number 2.05 (1968), and *People v. Malmenato*, 14 Ill.2d 52, 150 N.E.2d 806, cited in the IPI, which mentioned the futility of attempting to define reasonable doubt and yet held that the instruction given by the People was free from prejudicial error. Defendant next cites *People v. Woodley*, 57 Ill.App.2d 380, 206 N.E.2d 743, in which the court affirmed a conviction and held that prosecutor's remarks referring to defense tactic of emphasizing discrepancy between officers' testimony as a trick or device, did not constitute prejudicial error. The court declared, "The degree of impropriety which constitutes reversible error depends not only upon the language used but also upon the circumstances in which it is used. A judgment will be reversed only when it is reasonably clear that improper remarks influenced the jury in a manner that resulted in substantial prejudice to the accused." (57 Ill.App.2d 380, 385.) The question in the case at bar is whether the prosecutor's remarks influenced the jury in a manner which resulted in substantial prejudice to the accused. In *People v. Rogers*, 132 Ill.App.2d 501, 270 N.W.2d 186, the court announced the general rule that in order to overturn a conviction the record must show that substantial prejudice resulted to defendant such that the outcome would have been different. It cannot be said as a matter of law that the prosecutor's remarks in the present case resulted in an outcome different than what it would have been without such remarks.

The next contention of the defendant is that the court erred in denying his motion to suppress the in-court identification by the complainant. Defendant first cites *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152, for the proposition that where pretrial identification proceedings are conducted without an accused being represented by counsel and the accused can support his claim that the confrontation is unnecessarily suggestive and conducive to irreparable mistaken identification, the evidence is rendered inadmissible. The same result exists where photographic identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification (*People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1). In *Brown* the court upheld both identification procedures. It stated that the record did not reflect that the police officers in any way directed complainant's attention to the defendant's photograph or in any way suggested that defendant was the one who attacked her. With regard to the lineup the court stated: "After identifying the defendant from the photographs, the police did not discuss the matter with the prosecutrix until she was asked to view

some suspects. She was not told that one of the suspects was the man whom she had identified from the photographs. Additionally, all of the participants in the lineup were of the same appearance and dress." (52 Ill.2d 94, 100.) In the *Blumenshine* case the court held the identification process was highly suggestive and improper but the record did not permit informed judgment as to whether witnesses' identifications were based on observations dependent on improper identification proceedings. In that case two men with silk stockings pulled over their faces robbed the patrons of a laundromat. About 3 weeks later the four victims were brought to the police station, and the two accused were first shown alone in a room through a one-way mirror and then were shown together. Two of the four victims were told that the suspects were in custody and were asked to view them. The court stated the general rule that whether there was a denial of due process depends on whether the witness' identification at trial was dependent on or influenced by the improper viewing. In the case at bar the evidence is disputed as to the facts surrounding both the photographic identification and the lineup. Defendant claims that the other men in the lineup were not of similar age as defendant who was 21 for the other men ranged from 18 to 29. He claims further that the heights of the men were very dissimilar from defendant, who was about 6 foot 4, for the heights of the others varied from 5 foot 9 to 6 foot, and complainant had told the police that the robber was tall. He further argues that the weights differed considerably in that his weight was around 140 and the weights of the others were between 126 and 165 and, further, that defendant was clean-shaven and some of the others were not. Defendant contends also that the procedure used by the police to get the photos was highly suggestive, since they made it known to complainant after he failed to identify any of the pictures in the station that they were sending to the county jail to get some pictures and that this would imply that the suspect was already in custody. Defendant's further argument concerning the inadmissibility of the in-court identification was that the complainant never saw the gold tooth of defendant but testified that defendant had one, the police wanted each member of the lineup to state his name and defendant was the only one with a gold tooth (each member of the lineup refused to say anything), and defendant had to pose before the mirror a lot longer than the others, and he heard complainant say that defendant did not look like the robber, and the police sergeant told complainant that this was the suspect with the gold in his mouth and that this was the suspect complainant picked out of the mug book. Defendant briefly claims further that he was deprived of his rights under *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967, and that counsel was absent at a "critical" stage. There is evidence, how-

ever, that defense counsel was in fact present before the lineup, spoke to defendant, gave him advice and saw that all members of the lineup were dressed alike. The evidence concerning the physical characteristics of the members of the lineup is somewhat disputed, but it cannot be stated as a matter of law that defendant sustained his burden to show that the lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny defendant due process. There is sufficient evidence to show that the taxi driver had ample time to observe the robber and that, based on such observation, he was able to identify defendant in both the photos and in the lineup. The cases cited by defendant, as noted above, are distinguishable from the case at bar.

■■■ Defendant's next contention is that the court erred in denying defendant's motion for a mistrial. The motion was based on the following colloquy between the State's attorney and the taxi driver:

"Q. Did you see anybody in there?

A. In that bunch of pictures * * * no.

Q. You told them there was nobody in there you recognized? What did he do?

A. They sent to the County Jail and they got a picture and they brought some pictures back.

Q. What did you see in those?

A. Then I saw Wyatt's picture in there."

Defendant's theory is that the effect and intent of the above testimony was to prejudice the jury by implying that defendant had a prior criminal record. He cites two cases in support of the proposition that the only use which can be made of a prior criminal record at trial is for the purpose of affecting the credibility of the witness and must be brought out by a properly authenticated record of the conviction. (*People v. Williams,* 72 Ill.App.2d 96, 218 N.E.2d 771, *People v. Flynn,* 8 Ill.2d 116; 133 N.E.2d 257.) The State counters that the subject of police photographs was raised by defense counsel first and argues that the State's Attorney had a right to respond in an attempt to clarify answers given by the witness regarding the police photos. There is insufficient evidence that the State's Attorney's design was to imply that defendant had a prior criminal record, and therefore we cannot hold as a matter of law that defendant was entitled to a mistrial based on the above colloquy.

■■ Defendant's next argument is that he was not proven guilty beyond a reasonable doubt. He first argues that the State must prove beyond a reasonable doubt each of the elements necessary to constitute the crime charged and cites *People v. Lott,* 24 Ill.2d 188, 181 N.E.2d 112. We do not question the validity of the rule, but defendant's argument that the State failed here to comply with the rule based on its failure to prove

the existence of the 12-gauge shotgun is erroneous. As mentioned earlier, the existence of the 12-gauge is not a material element of the offense of armed robbery. Defendant next argues that the identity of the robber was not proved beyond a reasonable doubt. Again he recites as a general principle of law that one of the essential elements which the State must prove beyond a reasonable doubt is the identity of the accused as the one who committed the crime charged, citing *People v. Dante*, 35 Ill.2d 538, 221 N.E.2d 409. However, as applied in the case at bar, there is sufficient evidence, although disputed, to uphold the identification of defendant as the robber. Defendant cites *People v. Cullotta*, 32 Ill.2d 502, 207 N.E.2d 444, and *People v. Williams*, 96 Ill.App.2d 64, 237 N.E.2d 750, to support its contention that the identification of the accused was vague, doubtful and uncertain and therefore the conviction not sustainable. In *Cullotta* the two officers who identified the defendant had only a fleeting view of the men in the laundromat as they drove by in their patrol car, plus it was snowing, and the officers only had a side or profile view of the faces of the suspects. In *Williams* the court upheld the identification of the accused and held that the testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even if that testimony is contradicted by the accused. In the present case the witness had sufficient opportunity to observe the defendant, and he identified him in the photo and in the lineup and at the trial. It is also important to note here that there was the corroborating fingerprint of defendant found on the paper which was located in the back seat of the cab in which defendant claimed he was never present. Despite the fact that there was conflicting evidence here concerning the color and type shirt and some conflict regarding the identification process, there was sufficient evidence to sustain the validity of the identification. The third part of defendant's attack concerning the existence of a reasonable doubt relates to the fingerprint evidence. This court must note that the evidence regarding the fingerprint constitutes perhaps the weakest part of the People's case, and yet it does constitute some evidence corroborating the identification.

■■ Defendant's last argument is that the sentence of from 4 to 12 years is excessive in view of defendant's past history and in view of the specific recommendation of the adult probation officer that defendant be allowed to utilize the work release program. First of all, it must be noted that armed robbery is a Class 1 felony (Ill. Rev. Stat., ch. 38, par. 18—2(b)), for which the minimum term is 4 years (Ill. Rev. Stat., ch. 38, par. 1005—8—1(c)(2)) and the maximum any term in excess of 4 years (Ill. Rev. Stat., ch. 38, par. 1005—8—1(b)(2)), and therefore the statutory pro-

visions are complied with, and this court on review will be most reluctant to hold that the trial court abused its discretion in not putting defendant in a work-release program. The recommendation of the adult probation officer is, of course, not binding on the trial court.

For the foregoing reasons, the judgment and sentence of the circuit court of Peoria County is affirmed.

Judgment affirmed.

SCOTT, P. J., and DIXON, J., concur.