THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN HARRISON, Defendant-Appellant.

First District (5th Division)    No. 76-1709

Opinion filed January 13, 1978.

James J. Doherty, Public Defender, of Chicago (Dennis M. Fleming and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Jonathan Regunberg, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of robbery and sentenced to a term of two to eight years. On appeal, he contends that (1) the trial court, in denying his motion to suppress identification testimony, erred in not considering the totality of circumstances surrounding the

pretrial identification procedure; and (2) he was not proven guilty beyond a reasonable doubt.

From testimony adduced at the pretrial hearing on defendant's motion to suppress, it appears that three men robbed a liquor store of $7,000 in cash and checks. Sidney Berman, an employee of the store, testified that during the robbery one of the robbers, whom he described as being "Negro, very tall and thin," held a gun on him. The next day, he went to the police station to look through "mug" books and, from among the hundreds of photographs, he picked out those of defendant and two others as resembling the man who held the gun on him. Within a week of the robbery, he was called by a policeman who spoke of a suspect and asked Berman to view a lineup. At the lineup, a photograph of which was introduced as evidence, Berman positively identified defendant. Berman admitted that at the time of the lineup he knew one of the robbers had been shot, but the police did not suggest that any of the participants in the lineup had been wounded nor did any of them appear to be.

On the basis of the foregoing testimony, the motion to suppress was denied and, to the extent that Berman's trial testimony is identical to his testimony at the hearing on the motion to suppress, it will not be repeated. However, he also testified at trial that he was working behind a counter at the front of the store when defendant reached over the counter's five-foot partition and pointed a handgun at him. Simultaneously, he observed a second gunman proceed to the back of the store where the owner, Sam Rosen, was working and saw a third gunman remove the cash and checks from the cash box and register. Berman faced defendant directly for 30 seconds, but because the counter's five-foot-high partition separated Berman from defendant, he could only view him from the shoulders up. The gunman then directed him to lie down on the floor, and when he did so he lost sight of the gunman.

During the trial, Berman identified defendant as one of the three men who committed the robbery and also testified that he had identified defendant at a lineup conducted in the police station. On cross-examination, Berman stated that defendant was standing only four feet away when he observed him; that the lighting in the store was very good; and that the gunman did not have any scars on his face. Defense counsel then positioned Berman four feet from defendant, and Berman again answered that defendant had no facial scars. When defense counsel pointed to marks on defendant's forehead and above his left eye, Berman stated that he did not think they were scars.

Sam Rosen, owner of the liquor store, testified that after the three robbers fled the store, he grabbed his handgun and ran after them. While in the store parking lot, he fired at the robber who had been holding the gun on Berman. When the robber fell, Rosen, thinking that he had

wounded him, continued on in an unsuccessful attempt to capture the other two men. However, before the police arrived at the store, the wounded man had left the area. The same day, the police called and asked him to come to Henrotin Hospital to view a possible suspect. There, he saw defendant sitting on a hospital bed, but he told police that he could not identify defendant as the man he had shot. Later, Rosen returned to the room where defendant was being treated and told defendant that he would put in a good word for him if he returned the stolen cash and checks. Rosen also testified that four months before trial, defendant came into his store and returned $400 of the stolen money and asked Rosen to inform the court of this act so that he could get a reduced sentence. On cross-examination, Rosen described the robber he shot as being 6'2" tall, weighing 190 pounds, and wearing a green shirt and wash pants. He admitted that on the night of the robbery, he described one of the robbers as being "Negro, twenty-five years of age, five foot eight inches tall, 185 pounds with black hair and brown eyes," but he said that he was describing the man who came into the back of the store where he was.

Officer Hartford testified that on the day of the occurrence, he was directed to North Avenue and Frontier—two blocks from the liquor store—in response to a radio call that a man had been shot. Upon his arrival, he observed defendant sitting on the stairs of a front porch. He walked up to defendant and asked whether he had heard any gunshots or knew of anyone that was hurt, but defendant said no. Hartford then continued his patrol but, when he received a similar radio message, he returned to the same location, where he found defendant sitting on the stairs of another building on the opposite side of the street from where he had first seen him. Hartford had another conversation with defendant, then patted him down for weapons. In doing so, he discovered blood on defendant's right side and on his pants. When asked about the blood, he told Hartford that he had been shot during a struggle on the south side of the city and that he had taken a taxi to the north side to get his gun for revenge. Hartford then transported defendant to Henrotin Hospital.

After defendant rested his case, without offering any evidence, he was found guilty of robbery, and he appeals from that finding.

OPINION

Defendant initially contends that the trial judge used an improper standard of evidence in determining whether the lineup was unnecessarily suggestive. In the hearing on the motion to suppress, defendant's counsel pointed out what he termed were the important factors concerning the testimony of Berman to be considered by the court. When the motion was denied, the court stated that these factors

went to the weight to be given Berman's testimony, rather than to the question as to whether or not the identification should be suppressed. From that statement of the court, defendant argues that it considered only the circumstances of the lineup itself in denying the motion, rather than the totality of all the circumstances leading up to and including the lineup.

In *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, it was held that in determining whether the pretrial confrontation conducted in a particular case is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law * * * *depends on the totality of circumstances surrounding it* * * *.*" (Emphasis added.) (388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972.) In *Kirby v. Sturges* (7th Cir. 1975), 510 F.2d 397, 402-03, *cert. denied* (1975), 421 U.S. 1016, 44 L. Ed. 2d 685, 95 S. Ct. 2424, the court in considering the use of the totality of circumstances in determining the admissibility of pretrial identification evidence, said:

> "Three different aspects of the 'totality of circumstances' have been noted in cases testing the admissibility of pretrial identification evidence. The *suggestive* aspects of the police procedures were emphasized in Palmer v. Peyton, 359 F.2d 199, 201 (4th Cir. 1966) and Foster v. California, 394 U.S. 440, 442, 443, 89 S. Ct. 1127, 22 L. Ed. 2d 402; the *justification* for using a suggestive procedure was the apparent basis of decision in Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; and the *reliability* of the identification was critical in Neil v. Biggers, 409 U.S. 188, 199, 201, 93 S. Ct. 375, 34 L. Ed. 2d 401; and Coleman v. Alabama, 399 U.S. 1, 5-6, 90 S. Ct. 1999, 26 L. Ed. 2d 387."

■■ Thus, it appears clear that the totality of all the circumstances should be considered by the court in the consideration of a motion to suppress a pretrial identification. In the instant case, we reject defendant's contention that the trial court did not consider this standard. The factors pointed out by defendant's counsel as important concerned only the testimony of Berman and, in our opinion, the trial court correctly stated that they went only to the weight to be given Berman's testimony. Nowhere in the court's statement is it indicated that the totality of the circumstances standard was not used.

It is in the light of a consideration of the totality of the circumstances that we address the substance of defendant's contention that the pretrial identification procedures employed in the instant case were unnecessarily suggestive, as contended by defendant.

■■ It is the burden of defendant to establish that a pretrial identification procedure was so suggestive as to give right to a substantial likelihood of irreparable misidentification. (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Watkins* (1970), 46 Ill. 2d 273, 263 N.E.2d

115; *People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) Here, from our review of the record, we do not believe defendant has met this burden. He argues suggestiveness resulted from the following circumstances:

First, because the police told the identifying witness, Berman, that they had a suspect in custody. It appears to us, however, that whenever the victim of a crime is asked to come to the police station to look over persons arrested, there is an unavoidable intimation that the police have someone in custody who might be the perpetrator of the crime. (See *People v. Bracey* (1970), 129 Ill. App. 2d 57, 63, 262 N.E.2d 748, 750; *People v. McIntosh* (1967), 82 Ill. App. 2d 90, 227 N.E.2d 76.) It is also significant here that we have found nothing in the record to support any implication that Berman was influenced by knowledge that a suspect was in custody.

Second, because defendant was the only participant in the lineup fitting Berman's description that the robber was "Negro, very tall and thin." We note that while the photographs of the lineup introduced into evidence show that defendant was the tallest of the five lineup participants, they also disclose that all of the participants were approximately the same color and of the same approximate weight and age. It is not required that all men placed in a lineup must be physically identical, and differences in size among them (if not too great) are of little consequence. (*People v. Scott* (1974), 20 Ill. App. 3d 880, 314 N.E.2d 671; *People v. Prignano* (1971), 2 Ill. App. 3d 1063, 278 N.E.2d 128, *cert. denied* (1972), 409 U.S. 851, 34 L. Ed. 2d 94, 93 S. Ct. 62.) In *People v. Wyatt* (1974), 23 Ill. App. 3d 587, 319 N.E.2d 575, a lineup was held not suggestive where defendant was at least four inches taller than any of the other participants, even though (as in the instant case) the victim had described the offender as being "tall."

Third, because defendant was the only man in the lineup of the three whose pictures had previously been picked by Berman from the mug books as resembling the person who confronted him. These photographs are not included in the record, so that we are unable to determine whether they had any significance as to possible suggestiveness, either because Berman was not able to select one of three men at the time he viewed the mug books or because the other two were not in the lineup.

Fourth, because Berman did not have adequate opportunity to observe the robber. Berman testified he was facing defendant for 30 seconds—during which time he was able to see his head and shoulders above a partition which separated them. It appears that Berman's attention was focused on defendant because the latter was pointing a gun at him and that the store was well lighted. In *People v. Neal* (1974), 15 Ill. App. 3d 940, 306 N.E.2d 43, an identification was held to be positive and

conclusive where the witness had a "full-face" view of defendant for an interval of about 30 seconds when he stared up at the witness as she looked out of her window about 20 feet away. In *People v. Hahn* (1976), 39 Ill. App. 3d 969, 350 N.E.2d 839, an identification by a police officer was held to be positive, although he viewed defendant for only two seconds from only eight feet away in a well-lighted area.

■■ Thus, we reject defendant's contention that the lineup identification was unnecessarily suggestive. However, even assuming arguendo that it was, we believe that Berman's in-court identification would still be admissible. The existence of an independent origin will validate an in-court identification even though there may have been one previous which was impermissibly suggestive. *People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409; *People v. Patrick* (1972), 53 Ill. 2d 201, 290 N.E.2d 227. See also *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

Berman testified that he stood only four feet away from the robber; that he looked directly at his face for 30 seconds in a well-lighted store, and he identified defendant in a lineup within a week of the robbery. This, we believe, adequately establishes that there was a sufficient independent origin to support his in-court identification of defendant.

Defendant finally contends the evidence was insufficient to establish his guilt beyond a reasonable doubt. In weighing the sufficiency of evidence, the finding of the trier of fact will be affirmed unless the court of review can form a reasonable and well-founded doubt as to defendant's guilt. *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.

It is well settled that the testimony of a single identification witness, if positive and credible, is sufficient to support a conviction. *People v. Jones; People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.

■■ In support of his contention, defendant finds fault with the testimony of both Berman and Rosen. He first argues that Berman lacked the opportunity to observe the man who confronted him because that man was behind a counter surrounded on three sides by a five-foot partition. We disagree. The record reveals that Berman became aware of the robbery when an unmasked man leaned over the partition and pointed a handgun at him; that Berman was standing only four feet away from the robber in a well-lighted store; that he could see the head and shoulders of the robber; and that he looked directly at the robber for 30 seconds. We think this was adequate opportunity for him to observe the man who confronted him. See *People v. Neal; People v. Hahn.*

Defendant then suggests that Berman's description of the driver and his inability to describe the type and color of his clothing makes Berman's identification testimony vague, doubtful and uncertain. We note,

however, that precise accuracy in describing the facial characteristics and clothing of defendant is not necessary where the identification is otherwise positive. (*People v. Neeley* (1974), 18 Ill. App. 3d 287, 309 N.E.2d 725.) The lack of these details affects only the weight to be given the identification testimony. (*In re Williams* (1974), 24 Ill. App. 3d 593, 321 N.E.2d 281; *People v. Robinson* (1972), 3 Ill. App. 3d 843, 279 N.E.2d 526.) Defendant argues also that Berman's testimony was not credible because of a discrepancy between his testimony at trial and his testimony at the preliminary hearing. Again, we disagree. At trial, after testifying that the man who confronted him did not have a mustache, Berman admitted that he testified at the preliminary hearing that the robber had a mustache. Such a minor discrepancy does not necessarily render invalid an identification by that witness; but, rather, goes to the weight to be afforded such testimony by the trier of fact. (*People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) From our examination of the record, we do not believe that this discrepancy invalidated Berman's identification testimony. See *People v. Catlett* (1971), 48 Ill. 2d 56, 63, 268 N.E.2d 378, 381, where defendant's mustache was not mentioned by the witness.

Defendant also maintains that certain of Rosen's testimony at trial is contradictory and inconsistent. He points to the variance in Rosen's description at trial of the robber he shot in the store parking lot and a description he gave to the police on the day of the robbery. We think, however, that this variance was adequately explained by Rosen, who testified that he shot "the last one to leave the store, of the three. He was holding a gun on the front clerk." Rosen admitted he did not have the opportunity to observe the person he shot while the robbers were in the store, but that he viewed him during the pursuit and "as I ran past him after he fell." He described the person he shot as 6'2" tall, weighing 185 pounds. He admitted that on the day of the robbery the only description he gave to the police was of a man 5'8" tall and weighing 185 pounds, but he stated that this was of the man who held the gun on him during the robbery, and he added, "I don't know if I ever gave them a description at that time of the man I shot." Defendant also attaches significance to the fact that Rosen testified defendant had returned $400 of the stolen money to him four months before trial but did not disclose the return of this money until trial.

Defendant concludes that the "uncertain identification testimony" of Berman, combined with "the numerous inconsistencies" in Rosen's testimony, create a reasonable doubt of his guilt. In this regard, we note that the weight and credibility to be afforded a witness's testimony is a determination for the trier of fact and, unless that determination is so unreasonable as to raise a reasonable doubt of defendant's guilt, it will not

be disturbed on appeal. *People v. Catlett; People v. Davis* (1958), 14 Ill. 2d 196, 151 N.E.2d 308.

From our examination of the record, we are of the opinion that the evidence was sufficient to justify a finding of guilt beyond a reasonable doubt.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.