THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOYLE EDWARD JOHNSON *et al.*, Defendants (Alan "Lil Al" Walker,
Defendant-Appellant).

Fourth District No. 4—82—0845

Opinion filed April 30, 1984.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

Defendant Alan Walker was convicted in the circuit court of Champaign County of the offenses of murder, attempt (murder), and armed robbery and was sentenced to natural life imprisonment for murder and concurrent terms of 50 years for armed robbery and attempted murder. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1, 8—4, 18—2.) Defendant Johnson entered a negotiated plea with the State, and no appeal was

taken. (See *People v. White* (1984), 122 Ill. App. 3d 24.) Our references to defendant herein relate only to defendant Walker. Defendant argues here that (1) the trial court erred in denying a motion to suppress physical evidence seized from the vehicle he was driving; (2) a pretrial lineup was unnecessarily suggestive; (3) he was not proved guilty beyond a reasonable doubt; (4) the trial court erred in allowing the admission of expert testimony; (5) his right to a representative jury was violated by excluding certain jurors for cause; (6) the instructions for attempted murder were erroneous; and (7) the trial court abused its discretion in sentencing him to natural life imprisonment. We affirm.

The evidence at trial indicates that on August 6, 1982, at a rest stop along Interstate 57, near Pesotum, Illinois, Waymond Jackson was killed from a shotgun blast to the back of the head and his companion, Donald Stewart, was shot several times with a handgun, sustaining permanent injuries. The testimony discloses that the victims were running a prostitution operation at the rest stop and were shot by operatives of a rival group of pimps. Four prostitutes, working for the victims, Angela Andujo, Carmen Lucas, Gabrie Davis, and Shirley Bond, were with the victims and were eyewitnesses to the slaying. They immediately advised State police of the crime and an emergency dispatch was broadcast over the State police emergency network that a possible suspect vehicle was a silver, newer model car with license number XF 7184.

The State police dispatch was monitored by Farmer City police officer Larry Jacobsen and he, along with De Witt County deputy Chuck Wells, proceeded to the intersection of routes 150 and 54, approximately 40 miles northwest of the crime scene. Within minutes, Officer Jacobsen observed a 1980 Silver Chevrolet Malibu with license QV 7834, with one headlamp, stop near the intersection and back off the roadway. Officer Jacobsen started to drive toward the vehicle when it turned into the lot where he was positioned. Walker stopped the car, exited the vehicle and yelled "officer, officer." Jacobsen instructed Walker to drive into a nearby gasoline station parking lot so they could talk, and defendant pulled into the lot with Officer Jacobsen behind and Officer Wells in a separate vehicle on the other side of defendant's car.

Walker exited the vehicle and proceeded to explain that he had been driving from the Champaign area (near Pesotum) toward Chicago and was lost. Jacobsen apparently gave defendant directions but then walked to the front of the car to point out the inoperable headlamp. Defendant was asked to produce a driver's license, but he said he did not have one. Jacobsen also noted another person lying in the back seat and requested Deputy Wells to get this person out of the car. Jacobsen

then obtained identification from the other person, Doyle Johnson, and asked defendant for identification which he did not have. Walker gave Jacobsen his name and date of birth and Jacobsen returned to his squad car to run a vehicle check. According to Walker, Officer Wells then opened the back door of the vehicle, began a complete search of the car on his hands and knees, and located a live round of .357 ammunition. Officer Wells, however, stated that he observed the round in plain view while standing outside the vehicle.

Another De Witt County deputy, Officer Chick, who was called as a backup, testified that he had also monitored the State police dispatch and was aware that the homicide suspects were two black males, as were defendant and Johnson, and one of the suspects was bearded and wearing a maroon baseball cap as was Walker. During the stop, Jacobsen was in contact with the local police dispatcher, who in turn was in contact with the State police, to verify information about the vehicle registration. At some point during the radio broadcast, Officer Jacobsen relayed a description of Walker and Johnson and the similarities between the descriptions led the officers to suspect defendants' possible involvement in the shooting earlier that morning. The car and suspects were then fully searched and a bag believed to contain cannabis was found, although no weapons were found in the car. Walker was arrested for improper lighting, driving without a license, failure to display a license, and failure to possess a firearm owner's identification card.

■ Walker first argues that the trial court erred in denying his motion to suppress items of evidence taken from the automobile. The trial court denied the motion to suppress on the ground that the search was justified for a number of reasons aside from having probable cause to believe that Walker and Johnson were the assailants in the homicide. The court found that the officers had probable cause for the stop based upon the defective headlamp, and found credible Officer Wells' testimony that he discovered the round of ammunition in plain view. The court concluded that once the round of ammunition was discovered in plain view and it was discerned that neither Walker nor Johnson had a firearm owner's identification card, either a limited *Terry* search was proper (see *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868) or a full search incident to an arrest. Walker's challenge on appeal to the trial court's findings relates primarily to the court's factual conclusion that Officer Wells discovered the ammunition in plain view. Defendant charges that the facts indicate practical impossibility for such an observation since Wells did not have a flashlight, there was no overhead lighting in the area, and the car doors were shut.

From the inherent limitations of appellate review, it is not for this court to determine the weight and credibility of evidence. It is the province of the judge hearing the motion to suppress to determine the witnesses' credibility and the weight to be given their testimony since he had the advantage of observing their demeanor while testifying. (*People v. Chandler* (1967), 84 Ill. App. 2d 231, 228 N.E.2d 588.) A circuit court's ruling on a motion to suppress will not be overturned unless it is found to be clearly erroneous. *People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.

We find the trial court's conclusion is not clearly erroneous, and the record suggests other theories to support the officers' actions in searching the vehicle and its occupants. The "stop" of defendant by Officer Jacobsen (if Officer Jacobsen's request that defendant pull in the gasoline station parking lot can even be deemed a stop) was supported upon probable cause to make an arrest for the traffic offense, and once a stop is made, a limited search of the vehicle and occupants is permissible if the circumstances reasonably indicate that the officer is dealing with a criminal rather than an ordinary traffic offender. (See *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469; *People v. Lichtenheld* (1976), 44 Ill. App. 3d 647, 358 N.E.2d 694.) Moreover, Walker's arrest for the traffic offenses likewise justified a search incident to the arrest. (*United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467; *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488.) Finally, the similarities between the description of defendant, the vehicle, and the State police broadcast furnished sufficient probable cause to believe that the vehicle contained fruits or instrumentalities of a crime. (*Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *Colorado v. Bannister* (1980), 449 U.S. 1, 66 L. Ed. 2d 1, 101 S. Ct. 42.) It may not have been apparent that defendant was a possible homicide suspect when he was initially stopped, but by the time Officer Chick had arrived and Jacobsen had discussed Walker's description with the local police dispatcher, sufficient information was in their possession for a finding that probable cause existed to connect the defendant with the homicide. In light of the conclusions reached, it is unnecessary to respond to the State's argument that defendant lacks standing to question the search and seizure. See *People v. Flowers* (1982), 111 Ill. App. 3d 348, 444 N.E.2d 242.

 Defendant also raises an issue as to the composition of a pretrial lineup. On August 6, 1982, the same day of the offense, defendant and codefendant, Doyle Johnson, were placed in a seven-man lineup. All the persons in the lineup were black, clad in jail uniforms, six had

mustaches, and two had beards. Their heights ranged from 5 feet 6 inches to 6 feet 1½ inches, their ages from 23 to 34, and their weights from 105 to 165 pounds. The eyewitnesses to the shooting described one assailant as heavy set, with a full beard, and the other man (Johnson) as slimmer and of medium height. Before the lineup, the four eyewitnesses were told that the police had two suspects in custody but were not told who these persons were. All four eyewitnesses separately identified Walker in the lineup.

Defendant argues that he was denied due process when the court refused to suppress evidence of his out-of-court identification and his in-court identification by the four eyewitnesses to the shooting. Defendant suggests that the lineup was unnecessarily suggestive and conducive to an irreparable mistaken identification because the witnesses knew the suspects were in the lineup, only two persons in the lineup had beards, and the only other person with a full beard was taller than the defendant. See *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

The fact that the witnesses knew the suspects were in the lineup is not suggestive *per se* but is merely stating the obvious (*People v. Madden* (1977), 52 Ill. App. 3d 951, 368 N.E.2d 384), and not all of the participants in the lineup need match the description given by the victim. (*People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915; *People v. Miller* (1977), 55 Ill. App. 3d 421, 370 N.E.2d 1155; *People v. Wyatt* (1974), 23 Ill. App. 3d 587, 319 N.E.2d 575.) In *Harrison* the defendant was the only tall person in the lineup; in *Miller* the defendant was the only one with light hair; and in *Wyatt* the defendant was the only tall suspect with a gold tooth. In all of the lineups in these cases, the defendant was the only suspect in the lineup with a distinguishing characteristic as described by the victim, but under the circumstances no suggestiveness was found to vitiate the witnesses' identification. The lineup here is even less subject to criticism, since the lineup contained six persons with varying degrees of facial hair. Clearly, such a lineup cannot be said to be unnecessarily suggestive to require the exclusion of the out-of-court identifications.

Even assuming that the lineup was suggestive, an out-of-court identification is still admissible so long as it is not likely to lead to an irreparable mistaken identification. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) In considering whether a suggestive lineup is likely to lead to an irreparable mistaken identification, the court must consider the opportunity of the witness to view the crime, the witness' degree of attention, the level of certainty demonstrated at the confrontation, and the time between the crime and con-

frontation. (*Manson.*) The four eyewitnesses viewed the shooting of the victims at the rest stop for several minutes at very close range. They all testified that there were lights from passing cars and the illumination from the moon, and they had a good opportunity to view the assailants. They had also seen the defendants earlier when they pulled into the rest stop asking for directions to Chicago. Finally, all the witnesses unequivocally identified Walker as the murderer at the lineup which was held the day of the offense. Under these circumstances, we hold that the lineup was neither unnecessarily suggestive nor likely to lead to an irreparable mistaken identification. The trial court correctly denied Walker's motion to suppress the identification testimony.

■ Walker also argues that the State failed to prove his guilt beyond a reasonable doubt. We disagree. Defendant was identified by four eyewitnesses to the shooting both in court and out of court, and each witness described in detail the acts of the robbery and the shooting of Jackson and Stewart. In addition to this direct testimony, the State introduced evidence that when the defendant was arrested he possessed a round of .357 ammunition of a type which could have fired from one of the handguns found north of the rest stop, his clothing had blood on it which was consistent with that of the victim, and evidence was also introduced that a sawed-off shotgun, handgun, and other ammunition were found a short distance from the rest stop along the interstate. The testimony of a single credible eyewitness is sufficient to establish guilt beyond a reasonable doubt, and a reviewing court will not reverse a conviction unless the evidence is so unsatisfactory that a reasonable doubt of defendant's guilt remains. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866; *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136.) The eyewitness identifications of the defendant and the physical evidence providing a link between defendant and the slaying, when considered with defendant's arrest and other circumstances, provided ample proof for the jury's finding that he was guilty beyond a reasonable doubt.

Walker points out that the eyewitnesses were prostitutes, that they initially lied to the police telling them they were returning from St. Louis when they pulled into the rest stop, and they disposed of the victim's handgun after the occurrence. Defendant also notes that the shooting occurred at night in a place where there was no overhead lighting and that, although the prostitutes believed that $750 was taken from Jackson, only $332 was found on defendant and Johnson when they were arrested. Suffice it to say, the jury was well aware of these weaknesses, and we find ample evidence to support their finding of guilt. The eyewitnesses explained that they were reluctant to tell the

police the reasons for their presence at the rest stop, they all identified Walker, and none of them was definite as to how much money Jackson possessed. The handgun of the victim, although admittedly hidden by one of the prostitutes, played no part in the sequence of events and the State introduced testimony that it had not been fired recently.

■ Defendant also assigns as error a ruling of the trial court which allowed Cecil McDougall to testify that a piece of rubber found in defendant's car matched a rubber surgical glove found north of the rest stop near the shotgun, handgun, and other ammunition. McDougall was employed by the Illinois Bureau of Scientific Services and had made numerous comparisons of glass pieces, tools, paint chips, blood, hair, etc., in his investigative work. McDougall compared the rubber found in defendant's car with the rubber glove found along the interstate near the shotgun, and took enlarged photographs for comparison. He concluded that the rubber tip found in defendant's car was once a part of the surgical glove found along the interstate. Walker contends that expert testimony was unnecessary to give an opinion on this comparison, and that the trial court should have excluded the opinion because it was not based upon any scientific or microscopic analysis and was only based upon a simple matching which any layman could have done.

In determining whether error has occurred in admitting expert testimony, this court will not upset the trial court's ruling unless its discretion has been abused. Such testimony is properly admitted when the subject matter is sufficiently beyond common experience so that only persons of experience and skill are capable of forming a correct judgment as to any connected fact. (*People v. Snow* (1974), 21 Ill. App. 3d 873, 316 N.E.2d 216; *People v. Perroni* (1958), 14 Ill. 2d 581, 153 N.E.2d 578.) It has also been stated that such testimony will be admitted if the expert has some knowledge or experience which will aid the court or jury in arriving at determinations on the questions at issue. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 702.4, at 363-64 (3d ed. 1979).) We find the issue here to be controlled by *Perroni*. There the supreme court said that it was proper to allow an expert to draw a comparison between a mark left on a safe with a crowbar found in defendant's possession. The court stated:

> "Certainly the facts brought out by Evans [expert witness] were not within the realm of ordinary observation. Before any deductions were possible, photographs had to be taken of the damaged portions of the safe. This was done by the use of a highly specialized instrument—a specially constructed, self-focusing and enlarging fingerprint camera. While the prints obtained as a result

of this process clearly show the peculiar marks left by the tool, yet only an expert would be qualified to compare them with the burr on the crowbar." (14 Ill. 2d 581, 591-92, 153 N.E.2d 578, 583.)

Here, the expert explained the comparison of the items by reference to enlarged photographic pictures, a comparison which the jury would have been unable to draw absent McDougall's testimony. McDougall's matching procedures and observations formed a sufficient basis to allow his opinion to be admitted and was of assistance to the trier of fact in determining whether the surgical glove found in defendant's car matched a part of a glove found near the weapons.

■ Turning next to instructional problems, Walker argues that his conviction for attempted murder must be reversed because the jury was improperly instructed on this offense. The instructions for attempted murder included all of the mental states listed in section 9—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1.) We note that this issue was neither raised at the instruction conference nor in Walker's post-trial motion. This error is now waived unless the error amounted to grave error or unless the case is close factually on this issue. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

In *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, and *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the supreme court held that the crime of attempted murder requires proof that the defendant acted with the intent to kill, and that the other lesser mental states sufficient for a murder conviction (intends to do great bodily harm, knows such acts will cause death, or knows such acts create a strong probability of death or great bodily harm) are insufficient. Only proof that the defendant acted with the intent to kill an individual will support a conviction of attempted murder.

In *Roberts*, the supreme court noted that there, as here, defendant did not object to the jury instructions on attempted murder which would have allowed a conviction short of proof that defendant acted with the intent to kill and rejected the suggestion that this amounted to grave error. As for the question of whether the evidence of Walker's intent was close, we believe the record demonstrates a pronounced intent to kill both Jackson and Stewart. As described by one of the eyewitnesses to the shooting, defendant ordered both Jackson and Stewart out of their cars, forcing them to lie face down on the pavement while he searched their clothing. After robbing Jackson, defendant ordered Johnson to "start over there" on Stewart, defendant then placed a shotgun near the back of Jackson's head while he was face down on the pavement and shot him.

■ Defendant also raises the same argument with the charges of the indictments, some of which alleged a mental state for attempted murder other than intent to kill. One indictment, however, did charge attempt in the language of intent to kill. The entry of a general verdict of guilty by the trial court obviates this defect since it will be presumed to be based upon the sufficient count charging intent to kill as required by *Trinkle*. See *People v. Lymore* (1962), 25 Ill. 2d 305, 185 N.E.2d 158.

■ Other issues raised by defendant in this appeal involve the jury selection process in general and one juror in particular. The State in this case requested the death penalty and the trial court excused jurors for cause who stated that they could not vote to impose the death penalty under any circumstance. Defendant argues that this practice of "Witherspooning" the jury deprived him of a jury chosen from a fair cross section of the community resulting in a jury more prone toward conviction. This court has addressed this issue in *People v. Kirkpatrick* (1979), 70 Ill. App. 3d 166, 387 N.E.2d 1284, and *People v. Nobles* (1980), 83 Ill. App. 3d 711, 404 N.E.2d 330, and more recently in *People v. Hargis* (1983), 118 Ill. App. 3d 1064, 456 N.E.2d 250. In *Hargis* this court noted the supreme court's opinion in *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346, was controlling on these issues. We adhere to *Lewis* and our prior decisions.

■ The other jury selection issue concerns a prospective juror who was asked by defense counsel whether he had any personal or business concern that would prevent him from devoting complete attention at the trial. He responded that he was a professor of entomology and was working on a paper in connection with his research which he had to complete in a short period of time. Kuhlman stated he could not be sure whether this would affect his ability to be attentive at trial. Defendant moved to exclude Kuhlman for cause, his request was denied, and a peremptory challenge was used. At a later point, defendant exhausted all of his peremptory challenges and was denied additional peremptories. Again, defendant failed to include this issue in his post-trial motion and to be reviewable, the error, if any, would have to constitute plain error. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

The burden of showing that a juror possessed a disqualifying state of mind is on the party challenging the juror and so long as the juror meets the statutory qualification, the trial court's decision on a challenge will not be disturbed unless it is against the manifest weight of the evidence. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) In *Cole* the supreme court indicated that a person is not competent to sit

as a juror if his state of mind is such that with him as a member of the jury a party will not receive a fair and impartial trial.

We interpret Kuhlman's remarks to indicate that he would have preferred not to serve on the jury. Kuhlman's statements do not support any conclusion that he would not have been able to fairly and impartially consider the evidence. We find no plain error in refusing to exclude Kuhlman from the panel.

Finally, Walker charges that his sentence of natural life imprisonment is an abuse of discretion. As previously indicted, the State requested the death penalty, and at the death penalty hearing, the jury found the existence of statutory aggravating circumstances to impose the death penalty. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b).) The jury failed to reach a unanimous finding that there were no mitigating factors to preclude a sentence of death, however, and the court then sentenced the defendant to a term of natural life imprisonment. Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1).

Defendant does not suggest that the sentence is not authorized by statute, nor that the trial court made insufficient findings or relied upon incompetent evidence at the sentencing hearing. Walker's argument appears to be based upon a comparison of the various heinous circumstances surrounding the murders in *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, and *People v. Hudson* (1981), 95 Ill. App. 3d 350, 420 N.E.2d 271, where life sentences were imposed. He also argues that the trial court gave insufficient consideration to his possibility of rehabilitation. We doubt if any meaningful distinction can be made between the factual nuances of *La Pointe* and *Hudson*. Nevertheless, we find no abuse of discretion in the sentence here. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The defendant's planned and unprovoked murder of Jackson by discharging a firearm at close range and his accountability for Johnson's attempted murder of Stewart in a similar fashion, considered with his prior criminal record, provides ample basis for the trial court's sentence.

For the foregoing reasons, the conviction and sentence are affirmed.

Affirmed.

MILLS, P.J., and MILLER, J., concur.